[No. D039787. Fourth Dist., Div. One. Jan. 30, 2003.]

JAMES WILLIAM TURNER, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Steven J. Carroll, County Public Defender, Matthew C. Braner and Stephen Cohan, Deputy County Public Defenders, for Petitioner.

No appearance for Respondent.

Paul J. Pfingst, District Attorney, Gregory Thompson, Assistant District Attorney, D. Michael Ebert and Anthony Lovett, Deputy District Attorneys, for Real Party in Interest.

OPINION

HALLER, J.—This case raises the issue of the circumstances under which an individual may be found to be a sexually violent predator under the Sexually Violent Predators Act (SVPA) after a jury has previously determined the person was not a sexually violent predator and the district attorney then files a new commitment petition after a new custodial term resulting from a parole revocation. We conclude that although the prior jury determination does not necessarily bar a subsequent SVPA petition after a new custodial term, in the subsequent proceeding the People may not relitigate the finding that the individual was not a sexually violent predator at the time of the prior release. Therefore, to establish probable cause on the subsequent petition, the district attorney must present evidence of changed circumstances affecting this factual determination.

Applying these principles, we determine the district attorney did not present sufficient evidence of changed circumstances to support a finding of

probable cause to believe James William Turner was a sexually violent predator at the time of his scheduled release from his parole revocation custody. We therefore issue a writ ordering the trial court to dismiss the SVPA petition filed on January 24, 2002. (Welf. & Inst. Code, § 6602.)[1]

## FACTUAL AND PROCEDURAL SUMMARY

Turner has a long history of violent criminal behavior, including rapes and assaults. In August 1984, Turner was convicted of committing forcible oral copulation and forcible oral copulation in concert against a victim in jail, and was sentenced to nine years. (Pen. Code, § 288a, subds. (c) & (d).) In January 1985, Turner was convicted of another forcible oral copulation against two victims in jail, and was sentenced to a consecutive term of 16 years. (Pen. Code, § 288a, subd. (c).)

After being incarcerated for more than 14 years, Turner was scheduled to be released in 1998. Before this release, in May 1998, the district attorney filed a petition alleging that Turner was a sexually violent predator under the SVPA. The superior court found probable cause for the petition, and the matter was tried before a jury. When the jury was unable to agree on a verdict, the court ordered a second trial. (See *People v. Turner* (2000) 78 Cal.App.4th 1131, 1135 [93 Cal.Rptr.2d 459] (*Turner I*).)[2] At the second trial, the prosecution called as witnesses two forensic psychologists, Dr. Gary Zinik and Dr. Hy Malinek, who opined that Turner suffered from sexual sadism, a type of paraphilia, and had an antisocial personality disorder, and these mental disorders would likely result in Turner committing sexually violent predatory offenses upon his release. (*Id.* at pp. 1136-1138.) Based on this evidence, the jury returned a verdict finding Turner was a sexually violent predator (*id.* at p. 1139), and the court thus committed Turner to the Atascadero State Hospital (Atascadero) for treatment for two years.

Toward the end of this two-year period, the district attorney filed a new petition seeking to recommit Turner for another two years under the SVPA. At the ensuing jury trial, the prosecution presented the opinions of two Atascadero psychologists (not Dr. Zinik or Dr. Malinek) to support its allegations that Turner continued to qualify as a sexually violent predator. Turner presented opposing viewpoints from two different psychologists. At

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]In *Turner I*, we held the superior court properly permitted a second trial after the first jury could not reach a verdict. (*Turner I, supra,* 78 Cal.App.4th at p. 1143.) *Turner I* contains a detailed description of the evidence presented at Turner's second trial, which we shall not repeat in this opinion.

the conclusion of the trial, on June 18, 2001, the jury found Turner was not a danger to the health and safety of others and was not likely to engage in acts of sexual violence upon his release, and therefore that he was not a sexually violent predator.

Based on these findings, the court released Turner from custody the next day. Turner was placed on parole in the high-risk sex offender program, which required him to comply with numerous highly restrictive parole conditions. Three months later, in mid-September 2001, Turner was charged with violating his curfew condition. According to his parole officer, Turner was residing at a downtown hotel in early September 2001, when he was specifically told to comply with his 8:00 p.m. to 8:00 a.m. curfew during the weekend of a downtown music festival. However, Turner's electronic monitoring system showed that he left his room about 9:00 on Saturday night of that weekend, and his whereabouts were unknown until Monday afternoon when he arrived for his scheduled sex offender counseling meeting at the San Diego parole office. Pursuant to department policy, Turner's parole officer immediately took Turner into custody. The parole officer stated that until Turner violated the curfew condition, Turner was making a positive adjustment to parole supervision, including attending regular counseling meetings and obtaining full-time employment.

Based on the curfew violation, Turner's parole was revoked and he was returned to custody for six months. On January 24, 2002, while Turner was still in custody, the district attorney filed a petition seeking to again commit Turner under the SVPA for a two-year period. The petition alleged Turner had been convicted of a sexually violent offense against two or more victims (the 1984 and 1985 offenses), and that Turner has a diagnosed mental disorder that makes him a danger to the health and safety of others in that it was likely he would engage in sexually violent criminal behavior. Turner moved to dismiss the petition, arguing the prior jury finding that he was not a sexually violent predator was binding in this subsequent proceeding, particularly because the supporting psychological reports contained no new information other than Turner's curfew violation in September 2001.

At the February 2002 probable cause hearing, the district attorney submitted evidence of Turner's 1984 and 1985 qualifying convictions, and reports authored by the two forensic psychologists who had supported the 1998 SVPA petition, Dr. Zinik and Dr. Malinek. These psychologists stated that Turner has a current mental disorder of paraphilia and sexual sadism, and opined that Turner is likely to engage in future sexually violent predatory behavior. Although both Dr. Zinik and Dr. Malinek prepared these reports in connection with the February 2002 probable cause hearing, and referenced

events that took place after Turner was placed on parole (i.e., the curfew violation), they reached these conclusions primarily based on facts that had been before the jury in the prior trial when the jury found Turner was not a sexually violent predator.

In response, Turner's counsel maintained the prosecution's evidence was insufficient to show that Turner was likely to engage in future sexually violent behavior, arguing the prosecution could not relitigate this issue when eight months earlier a jury had found he was not a sexually violent predator. In support, Turner sought to introduce the reports of the two psychologists who had testified on his behalf at his successful June 2001 SVPA jury trial. Both of these psychologists acknowledged that Turner had a diagnosable mental disorder, but opined it was not likely Turner would engage in sexually violent predatory behavior upon release. The psychologists based these conclusions on various facts, including that Turner had not been charged with a criminal violation since the mid-1980's, the lack of evidence that he had engaged in inappropriate behaviors in the past several years, Turner's strong identification with an organized religion, the absence of evidence of current substance abuse, and the evidence showing Turner was engaged in positive personal relationships. Both psychologists recognized that Turner had refused to participate in treatment at Atascadero but did not believe this refusal reflected that he would commit sexually violent conduct upon release.

The court sustained the district attorney's evidentiary objections to these reports on the basis that the reports were inadmissible hearsay and irrelevant to the issues at the probable cause hearing. The court further rejected Turner's legal arguments, and found sufficient evidence of probable cause despite the earlier jury finding. The court stated that Dr. Malinek identified Turner's September 2001 parole violation as evidence supporting the risk that Turner would reoffend, and noted that Dr. Zinik spoke with Turner's treating psychologist at Atascadero and reviewed the parole violation sheet before he reached his conclusions. Based on these facts, the trial court concluded that "both doctors did rely in coming to their conclusions on behavior that occurred after the jury's finding. And based on that, I think that they have—they have gone beyond the information that was presented to the [prior] jury. . . ." The court thus found probable cause and ordered that Turner remain in custody until the conclusion of the SVPA trial.

Turner petitioned for a writ of mandate in this court. We initially denied the petition, finding that Turner had an adequate remedy through an expedited appeal if he did not prevail at trial. The California Supreme Court, however, granted Turner's petition challenging this denial, and transferred

the matter with directions to vacate our order and to issue an order to show cause in this court. We have done so, and now reach the merits of Turner's contentions.

DISCUSSION

## I. Overview of SVPA

The SVPA provides for the involuntary civil commitment of certain offenders, following the completion of their prison terms, who are found to be sexually violent predators because they have previously been convicted of sexually violent crimes and currently suffer diagnosed mental disorders that make them dangerous because they are likely to engage in sexually violent predatory criminal behavior. (§ 6600 et seq.; *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 902 [119 Cal.Rptr.2d 1, 44 P.3d 949] (*Ghilotti*).)

An SVPA commitment requires a determination that an individual is a sexually violent predator or SVP. (*Ghilotti, supra,* 27 Cal.4th at p. 903.) "An SVP is 'a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' (§ 6600, subd. (a) (1).)" (*Ibid.*)

The process for determining whether a convicted sex offender is an SVP begins when an inmate is scheduled to be released from custody after a determinate sentence or a parole revocation. (*Ghilotti, supra,* 27 Cal.4th at p. 903.) The Department of Corrections is required to screen inmates who are "serving a determinate prison sentence or whose parole has been revoked" at least six months before their scheduled date of release from prison. (§ 6601, subd. (a).) If officials find the inmate is likely to be an SVP, he is referred for a "full evaluation" as to whether he meets the definition of an SVP. (§ 6601, subd. (b); *Ghilotti, supra,* 27 Cal.4th at p. 903.) " '[T]he person [is then] evaluated by two practicing psychiatrists or psychologists. . . . If both evaluators concur that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody, the Director shall forward a request for a [commitment] petition . . . to . . .' the county where the offender was convicted of the crime for which he is currently imprisoned." (*Ghilotti, supra,* 27 Cal.4th at p. 903.)

If the county's legal counsel agrees with the recommendation, a petition for commitment is filed in the superior court. (§ 6601, subd. (i).) The

superior court then holds a hearing to determine whether there is "probable cause" to believe the person named in the petition comes within the definition of an SVP, including whether the person is likely to engage in sexually violent predatory criminal behavior upon release. (§ 6602.) If no probable cause is found, the trial court must dismiss the petition. However, if the court finds probable cause, the court orders a trial to determine whether the person is an SVP under section 6600.

At the jury trial, "[t]he trier of fact is charged with determining whether the requirements for classification as an SVP have been established 'beyond a reasonable doubt.' (§ 6604.) Any jury verdict on the issue must be 'unanimous.' (§ 6603, subd. (d).) . . . [W]here the requisite SVP findings are made, 'the person shall be committed for two years to the custody of the . . . Department . . . for appropriate treatment and confinement in a secure facility. . . . [(§ 6604.)]' [Citation.]" (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1147 [81 Cal.Rptr.2d 492, 969 P.2d 584].) After two years, the district attorney may file a recommitment petition, and the same "rights, requirements and procedures" generally apply as govern original commitment proceedings. (§ 6604.1, subd. (b); see *Cooley v. Superior Court* (2001) 89 Cal.App.4th 785, 787-792 [107 Cal.Rptr.2d 724].) However, if "the court or jury is not satisfied beyond a reasonable doubt that the person is a sexually violent predator, the court shall direct that the person be released at the conclusion of the term for which he or she was initially sentenced, or that the person be unconditionally released at the end of parole, whichever is applicable." (§ 6604.)

In the past several years, California courts have rejected numerous constitutional challenges to the SVPA and have resolved various statutory interpretation questions arising from the statutory scheme. (See *Cooley v. Superior Court* (2002) 29 Cal.4th 228 [127 Cal.Rptr.2d 177, 57 P.3d 654] (*Cooley*); *People v. Hurtado* (2002) 28 Cal.4th 1179 [124 Cal.Rptr.2d 186, 52 P.3d 116]; *Ghilotti, supra,* 27 Cal.4th 888; *People v. Otto* (2001) 26 Cal.4th 200 [109 Cal.Rptr.2d 327, 26 P.3d 1061]; *Hubbart v. Superior Court, supra,* 19 Cal.4th 1138; *Turner I, supra,* 78 Cal.App.4th 1131; *People v. Hedge* (1999) 72 Cal.App.4th 1466 [86 Cal.Rptr.2d 52].)

II.   *Effect of Prior Finding That SVPA Defendant Was Not a Sexually Violent Predator*

The issues here are of first impression. If a jury has found an individual is not an SVP, may a subsequent petition be filed against that person after he has been released and then returned to custody for a parole violation? If so, what is the effect of the jury's former finding in the subsequent proceeding?

Turner contends the district attorney should be forever barred from filing a second commitment petition, or at least prohibited from filing a new petition until the individual has been convicted and sentenced on a new crime. The district attorney counters that the prior jury finding should have no effect once the person is released and returned to custody on a parole violation. We conclude neither of these approaches is supported by applicable legal principles.

█. First, Turner's argument that the SVPA does not permit separate petitions for a prison commitment and parole revocation arising from the same sentence is not supported by the SVPA's statutory language. The process of committing an individual under the SVPA is triggered by section 6601, which provides, "*Whenever* the Director of Corrections determines that an individual who is *in custody* under the jurisdiction of the Department of Corrections, and who is either serving a determinate prison sentence *or whose parole has been revoked,* may be a sexually violent predator, the director shall, at least six months prior to that individual's scheduled date for release from prison, refer the person for evaluation in accordance with this section." (Italics added.) The use of the word "whenever" and the express reference to a parole revocation make clear the Legislature intended that an SVPA petition may be filed against an individual who has been returned to custody on a parole revocation and who is alleged to be an SVP. The relevant statutes do not contain language creating an express or implied exception to this permitted filing merely because an earlier petition had been filed when the individual was released from the initial sentence.

Turner contends the fact that an SVP must be "unconditionally released" after an initial favorable jury verdict shows the Legislature intended to prohibit a second petition filed after a parole revocation. (§ 6604.) We disagree. By identifying an impending release from custody as the statutory trigger for an SVPA evaluation, the Legislature was seeking to ensure that every sexual offender who meets the statutory requirements would be evaluated to prevent likely harm to innocent victims. (See § 6601, subd. (a) (1).) In an uncodified statement, the Legislature stated it "finds and declares that it is in the interest of society to identify [SVP's] *prior to the expiration of their terms of imprisonment.* It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society." (Stats. 1995, ch. 763, § 1, p. 5921, italics added.) This intention would not be effectuated if the SVPA identification and petition process did not apply to an incarcerated individual merely because a previous petition had been litigated pertaining to an earlier imprisonment. Turner was "unconditionally released" (§ 6604), but was then returned to custody because he

violated his parole. At that point, the SVPA process was properly set in motion.

We find unavailing Turner's alternate argument that, even assuming the statutes do not prohibit a second petition, his due process rights require that we interpret the SVPA to mean a second petition may never be filed after a successful SVPA jury verdict with respect to the same crime. Turner maintains that after a jury finds an individual is not an SVP, due process does not permit continued involuntary commitment because the state's interest in protecting the public no longer prevails over the individual's interest in being free from compulsory confinement. We agree that under those limited circumstances an immediate second SVPA petition would be improper. But this conclusion does not apply to the situation where an individual has been reincarcerated for a parole violation and the evidence shows that upon *that* release, the individual would commit sexually violent predatory offenses against innocent and unsuspecting members of our community. In this situation, the state does not violate an individual's due process rights by involuntarily committing the individual if that individual has a mental impairment that makes him dangerous to others. (See *Hubbart v. Superior Court, supra,* 19 Cal.4th at p. 1151.) Although an individual against whom an SVP petition is filed has a strong liberty interest, this interest is outweighed by the government's significant interest in protecting the public from mentally ill persons who are likely to prey upon them. (*Ibid.; People v. Superior Court (Howard)* (1999) 70 Cal.App.4th 136, 155 [82 Cal.Rptr.2d 481].) This interest is not diminished because of the existence of earlier proceedings that pertained to the individual's mental state and dangerousness at a different time.

Despite these conclusions, we do not agree with the district attorney's position that a jury finding should have *no* effect on a later proceeding based on a parole revocation. Although the double jeopardy prohibition is inapplicable to the SVPA because the statutory scheme is civil in nature (see *Kansas v. Hendricks* (1997) 521 U.S. 346, 369 [117 S.Ct. 2072, 2085-2086, 138 L.Ed.2d 501]; *Hubbart v. Superior Court, supra,* 19 Cal.4th at p. 1172, fn. 32), courts have recognized that res judicata and collateral estoppel principles may apply in civil commitment proceedings. (See *People v. Francis* (2002) 98 Cal.App.4th 873, 877 [120 Cal.Rptr.2d 90].) If these principles did not apply, the integrity of the first proceeding could be undermined and there would be serious questions about the fundamental fairness of a scheme that would permit the government to file successive petitions against an individual in the same forum and on the same facts in a proceeding that could potentially result in a complete loss of liberty for that individual.

But a conclusion that collateral estoppel principles may apply in an SVPA commitment proceeding does not mean that a second petition is necessarily barred. ■ The collateral estoppel doctrine precludes a party from relitigating issues decided in a prior proceeding only to the extent certain threshold requirements are satisfied. (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 849 [25 Cal.Rptr.2d 500, 863 P.2d 745].) " 'First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' [Citation]." (*Ibid.*)

■ Under these principles, the critical question here is the extent to which the issue litigated and decided at the June 2001 trial—the likelihood of Turner committing violent sexual acts upon his release—was the same as the issue presented at the February 2002 probable cause proceeding. Under the SVPA, a determination of SVP status depends on whether the person " '*currently*' " suffers from a diagnosed mental disorder which prevents him from controlling sexually violent behavior and makes him dangerous and likely to reoffend. (*Hubbart v. Superior Court, supra,* 19 Cal.4th at p. 1162; see *People v. Carmony* (2002) 99 Cal.App.4th 317, 325 [120 Cal.Rptr.2d 896]; *People v. Hedge, supra,* 72 Cal.App.4th at p. 1476.) Thus, the issue at Turner's prior trial was whether he was likely to commit sexually violent predatory conduct *upon his release in June 2001.* The June 2001 court order releasing Turner from civil commitment expressly states the jury found Turner would not be a danger to others and that it was not likely he would engage in sexually violent predatory behavior.

This issue was different from the issue presented at the February 2002 probable cause hearing—whether Turner would be likely to commit sexually violent predatory acts when he is released on the parole revocation sentence in February 2002. Given the SVPA's requirement that the individual's *current* dangerousness be established, the issue of Turner's mental health and his resulting danger to others in February 2002 is not identical to the issue litigated in the prior proceeding and was not decided at the earlier trial. (See *People v. Hedge, supra,* 72 Cal.App.4th at pp. 1476, 1477.) The likelihood of a person committing criminal acts because of a mental disorder is not a fixed condition because an individual's mental health and potential dangerousness can, and frequently does, change. (*People v. Horn* (1984) 158 Cal.App.3d 1014, 1033 [205 Cal.Rptr. 119].) Recognizing this, courts generally hold that an adjudication of status or mental health issues is not

conclusive as to the same status on a later date. (See *People v. Carmony, supra,* 99 Cal.App.4th at p. 325; *People v. Horn, supra,* 158 Cal.App.3d at p. 1033.)[3]

Thus, under collateral estoppel principles, a prior jury finding that an individual was not an SVP does not absolutely bar a later petition seeking to show that the person is an SVP at a later time (after a new determinate prison sentence or parole revocation custody). This does not mean, however, that the prior factual finding that Turner was not likely to reoffend upon his prior release has no effect in the subsequent proceeding. It does in fact have strong probative value as to the precise issue to be decided in the current proceeding: whether Turner was dangerous and likely to commit sexually violent predatory acts upon his parole revocation release in February 2002, particularly because the two petitions were filed so close in time. In determining whether Turner is likely to commit sexually violent predatory acts upon a scheduled release in February 2002, it is certainly relevant to know that a jury found it was not likely that he would commit sexually violent predatory acts when he was released eight months earlier, in June 2001.

It is that specific issue—whether Turner was likely to reoffend in June 2001—that the district attorney is barred from relitigating because all of the elements of collateral estoppel are established. The parties were permitted to present all relevant evidence in the prior proceeding. The jury's finding was necessary to its decision and the finding was on the merits. Because there was no further court action to determine the rights of the parties, the jury's determination became final. Further, there was an identity of the parties because the San Diego District Attorney and Turner were parties in the current and the June 2001 proceeding. On this record, the People are barred from relitigating the specific finding reached by the jury in the prior proceeding.

*People v. Carmony, supra,* 99 Cal.App.4th 317, is consistent with this conclusion. In that case, the court held that a 1982 finding that an individual was not a "mentally disordered sex offender" (MDSO) did not have "conclusive effect" in an SVPA proceeding filed 20 years later. (*Id.* at pp. 322-326.) The court reasoned that although the MDSO finding was

---

[3]Turner contends the issues were identical in this case because there was no evidence that his mental disorder "involved a fluctuating mental state . . . ." However, although the nature of Turner's mental disorder may not change, the critical issue in an SVPA proceeding is whether the individual's current mental state would result in his committing violent sexual predatory offenses upon release. That issue can certainly change depending on numerous factors, including the current outward symptoms of the mental disorder, the various choices the person has made in adjusting to a particular living situation, and the individual's reaction to changes in his external environment.

relevant and admissible on the issue of the defendant's mental state in the later proceedings, it would be improper to hold that the People could not relitigate the issue of the individual's *current* mental state, in light of the "changeable nature of a person's mental health and dangerousness . . . ." (*Id.* at p. 325.) Although in reaching these conclusions the court stated it believed that in enacting the SVPA the Legislature had intended to implicitly abrogate the collateral estoppel doctrine, it made this remark in the context of its determination that the MDSO finding was not identical to the SVPA issue that was raised 20 years later. (*Id.* at pp. 325-326.) Thus, read in context, the court's statement refers to its determination that the elements of collateral estoppel did not apply in the particular case, rather than as a broad expression regarding the applicability of collateral estoppel principles in SVPA commitment proceedings.[4]

Accordingly, we hold that whereas a prior jury determination that an individual is not an SVP does not necessarily bar a subsequent petition after a release and parole revocation, the jury's prior determination is relevant and therefore admissible in the later SVPA proceeding. Moreover, under collateral estoppel principles, the district attorney may not relitigate the prior jury finding with respect to the same individual. Accordingly, to establish probable cause in the subsequent proceeding, the district attorney must present evidence of a change of circumstances, i.e., that despite the fact the individual did not possess the requisite dangerousness in the earlier proceeding, the circumstances have materially changed so that he now possesses that characteristic. In requiring the district attorney to present evidence of changed circumstances, we are not suggesting that historical information is no longer relevant. It clearly is. A mental health professional cannot be expected to render opinions as to current status without fully evaluating background information. However, where an individual has been found not to be an SVP and a petition is properly filed after that finding, the professional cannot rely solely on historical information. The professional must explain what has occurred in the interim to justify the conclusion the individual currently qualifies as an SVP.

III. *Sufficiency of Evidence of Changed Circumstances on "Likely to Engage" Issue*

We now turn to the question whether the trial court properly found the People established probable cause that Turner was likely to engage in

---

[4]*People v. Hedge, supra,* 72 Cal.App.4th 1466, another decision relied upon by the district attorney, is also consistent with our conclusions here. In that case, this court held the trial court properly retained jurisdiction to proceed on a second SVPA petition although the challenge to the first petition was pending for review before the California Supreme Court. Because there was no earlier factual finding that the individual was not an SVP, we did not specifically consider the issue presented here of the effect of such a finding on a later proceeding.

sexually violent conduct. We evaluate the evidence in light of our holding that the prosecution was required to show circumstances had changed after the prior jury determination that Turner was not an SVP.

Our Supreme Court recently delineated the proper scope and nature of the probable cause determination under the SVPA. (*Cooley, supra,* 29 Cal.4th 228.)[5] ▉ The *Cooley* court held that at a probable cause hearing the superior court must "determine whether a reasonable person *could entertain a strong suspicion* that the petitioner has satisfied all the elements required for a civil commitment as an SVP, specifically, whether (1) the offender has been convicted of a qualifying sexually violent offense against at least two victims; (2) the offender has a diagnosable mental disorder; (3) the disorder makes it likely he or she will engage in sexually violent criminal conduct if released; and (4) this sexually violent criminal conduct will be predatory in nature." (*Id.,* at p. 236, original italics.) The court additionally concluded the statutory phrase "likely to engage in sexually violent predatory criminal behavior upon . . . release" means "a *serious and well-founded risk*" the alleged SVP will commit the prohibited acts. (*Ibid.,* original italics.)

▉ The *Cooley* court stated that, in determining whether the prosecution has met its burden of proof on these issues, a trial court may "weigh the evidence, [and] resolve conflicts . . . ," but the trial court may "not find an absence of probable cause simply because it finds the defense witnesses slightly more persuasive than the prosecution witnesses . . . . [I]f the prosecution presents evidence a reasonable person could accept over that presented by the defense, probable cause should be found. The superior court may not substitute its own personal belief as to the ultimate determination to be made at trial for that of a reasonable person evaluating the evidence." (*Cooley, supra,* 29 Cal.4th at pp. 257-258.) Where, as here, the superior court at the probable cause hearing has not resolved factual disputes or passed upon the credibility of witnesses, an appellate court must conduct an independent review of the evidence to determine whether the evidence supports the superior court's probable cause findings. (*Id.* at p. 257.)

▉ Applying these principles, we conclude the prosecution did not meet its burden to show that, in light of the prior jury verdict, there is a serious and well-founded risk that Turner will engage in sexually violent criminal conduct upon his release. To prove this element, the district attorney relied exclusively on the reports of two psychologists, Dr. Zinik and

[5]*Cooley* was filed shortly after the oral argument in this case. We provided the parties the opportunity to file supplemental briefs regarding the applicability of the *Cooley* decision to certain issues on this appeal.

Dr. Malinek. But Dr. Malinek did not even acknowledge the prior jury finding, and Dr. Zinik merely noted the fact of the prior finding, without discussing the consequences of the jury verdict. At the very least, the prosecution's supporting reports must contain information showing the evaluating professionals understood and accepted, for purposes of the current diagnosis, the prior jury finding as true, and then explain why despite that prior finding, the facts are sufficiently different so that the individual is now a dangerous person who is likely to reoffend within the meaning of the SVPA.

Moreover, even if Dr. Zinik and Dr. Malinek had properly acknowledged the prior jury finding, neither psychologist relied on post-June 2001 facts to support their current conclusions. Instead, the reports make clear that these psychologists relied on evidence that was known and presented to the jury in the earlier proceeding. The only post-June 2001 evidence identified by these doctors was Turner's curfew violation. However, the psychologists did not state in their reports whether or how this information affected the determination that Turner is currently dangerous and likely to reoffend. Dr. Zinik merely quoted from the parole officer's report, but he did not state or suggest that he relied on this violation in reaching his conclusion that Turner was likely to commit sexually violent offenses upon his release from prison. Although Dr. Malinek did suggest that Turner's failure to follow his parole officer's directions was a factor in showing that Turner continued to be at high risk for committing predatory sexual offenses, read in context of the entire report this suggested link between the curfew violation and violent sexual conduct lacked sufficient substance to support a reasonable conclusion that the circumstances have sufficiently changed so that Turner was now likely to reoffend upon his release.

To demonstrate changed circumstances, the People now rely on the fact that Turner refused to be interviewed by Dr. Zinik or Dr. Malinek. However, neither Dr. Zinik nor Dr. Malinek identified this fact as a basis for reaching his conclusions. In light of this lack of reliance by the mental health professionals, the district attorney's suggested inference is unsupported.[6] The district attorney additionally contends that Turner's failure to explain his activities during his curfew break "permits the conclusion" that Turner "was drinking, or using drugs, or more than likely preying on strangers" and that a reasonable conclusion could be made that Turner "violated his curfew

---

[6]Indeed, the public defender has informed us that Dr. Malinek has changed his opinion about the likelihood of Turner reoffending after he conducted a personal interview with Turner while this issue was pending on appeal, and the district attorney has not disputed this representation.

condition so that he could prey upon the scores of people present at the [music festival] in an attempt to satisfy his 'predatory' desires." However, without any supporting evidence or reliance on such facts by the experts, these inferences are speculative at best. We also find unavailing the district attorney's argument that it satisfied the changed circumstances element because both doctors identified the curfew violation in their reports. The mere fact that the district attorney's two experts recognized that Turner violated his curfew is insufficient to show that these psychologists relied on this violation to reach their conclusions regarding the likelihood that Turner would commit sexually violent predatory offenses upon his release.

## IV. *Appropriate Disposition*

█ The final issue to be considered is the proper disposition of the case after we have determined that the trial court erred in concluding the SVPA petition was supported by probable cause.

Section 6602 provides that if the superior court determines that there is not probable cause, the court shall "dismiss the petition and any person subject to parole shall report to parole." (§ 6602.) This statutory mandate requires that upon finding insufficient evidence to support the SVPA petition and thus reversing the matter, we must order the court to vacate its probable cause finding and dismiss the petition.

In supplemental briefing, the district attorney argues that we should remand for a new probable cause hearing similar to the remand procedure described in *Cooley*. (*Cooley*, *supra*, 29 Cal.4th at pp. 259-261.) *Cooley*, however, is factually and legally distinguishable.

In *Cooley*, the superior court dismissed the SVPA petition after finding the district attorney failed to show it was "more likely than not" that the alleged SVP would reoffend. (*Cooley*, *supra*, 29 Cal.4th at p. 259, italics omitted.) After the Court of Appeal vacated the superior court's order, the SVPA defendant petitioned for review to the Supreme Court. The Supreme Court held the trial court erred, but instead of ordering the trial court to find probable cause and set the matter for an SVPA trial, the court remanded the matter for a new probable cause hearing. (*Id.* at pp. 259-261.) The *Cooley* court explained that although appellate courts should ordinarily apply the standard of review used in appellate review of criminal preliminary hearings, it declined to review the proceedings under the traditional standards because "[t]he entire superior court proceeding was infected with error because the

expert evidence presented by both the district attorney and [defendant] failed to consider whether potential sexual violence would be 'predatory' in nature and all the experts applied the wrong definition of 'likely.' " (*Id.* at pp. 236, 259-261.) The court reasoned "[i]t would be improper . . . under these circumstances, to uphold any factual findings made by the superior court, or to independently review the record to make our own factual findings." (*Id.* at p. 236.) The court thus instructed the Court of Appeal to remand the matter to the superior court to conduct a new probable cause hearing. (*Id.* at pp. 236, 261.)

In this case, the probable cause hearing was not similarly "infected" with legal error. Although this case presented issues of first impression regarding the effect of a prior jury finding that the defendant was not an SVP, the trial court commendably recognized that the district attorney was required to present evidence of changed circumstances and the court essentially articulated the same legal standard that we have determined should be applied in this case. Thus, unlike *Cooley,* the trial court identified the correct legal standard, but erred in applying that legal standard to the facts of the case. In this circumstance, there is no justification for remanding for a second hearing. In *Cooley,* the Supreme Court did not conclude—as we do here—that there was insufficient evidence to support the probable cause finding on the SVPA petition. Instead, it determined that because of legal errors in the proceedings below, it was unable to reach the question of the sufficiency of the evidence to support the probable cause findings. It was under those circumstances that the *Cooley* court held it was appropriate to remand for a new probable cause hearing. Those circumstances are not present here.

We reject the district attorney's alternate argument that it is entitled to a second probable cause hearing because the trial court "failed to consider" whether the potential sexual violence would be "predatory" in nature and failed to apply the "strong suspicion" standard for probable cause. Because these asserted errors caused no prejudice to the district attorney's position below, they cannot serve as the basis for ordering a new hearing. Put otherwise, even assuming the court erred in failing to consider whether Turner's potential sexually violent conduct included a predatory component and erred in failing to apply the "strong suspicion" standard, these errors favored the district attorney. Because we have determined the probable cause finding was unsupported on an independent basis (the absence of changed circumstances to show Turner was likely to commit a sexually violent offense), the additional errors asserted by the district attorney are not the basis for a second probable cause hearing in this case.

## DISPOSITION

Let a writ issue directing the superior court to vacate its order finding probable cause for the SVPA petition filed on January 24, 2002, and enter a new order dismissing the petition.

Huffman, Acting P. J., and McDonald, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied April 16, 2003. Baxter, J., was of the opinion that the petition should be granted.