[No. C035540. Third Dist. June 13, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
HAROLD CARMONY, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III, IV, V, VI, VII, and VIII of the Discussion.

318

## COUNSEL

Sarah Foxman Pattison, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Acting Chief Assistant Attorney General, Mary Jo Graves, Acting Assistant Attorney General, and Clayton S. Tanaka and Jane N. Kirkland, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CALLAHAN, J.**—Defendant Harold Carmony appeals from an order committing him to the custody of the State Department of Mental Health for two years after the court found true the allegation he was a sexually violent predator (SVP) within the meaning of the Sexually Violent Predators Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.).[1]

Defendant raises numerous claims of error. In the published part of this opinion, we reject defendant's contentions that (1) the 1982 finding he was not a mentally disordered sex offender (MDSO) bars relitigation of the issue of his mental health in SVPA proceedings; and (2) he was denied due process by lack of notice and assistance of counsel during evaluations conducted by two psychologists prior to filing the petition to commit him as an SVP. In the unpublished part of our opinion, we reject his other arguments. Thus, we affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant was convicted on March 26, 1982, of various sexual offenses, including multiple violations of Penal Code section 288a, a sexually violent, predatory offense within the meaning of sections 6600, subdivision (b), and 6600.1. Defendant's victims were four adolescent boys, aged 11, 13, and 15. The court found defendant was not an MDSO, and ultimately sentenced him to state prison for a term of 34 years and four months.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

Less than two months before defendant's scheduled release on parole, the district attorney filed a petition to commit him as an SVP. The matter proceeded to a court trial.

The district attorney introduced the testimony of two clinical psychologists, Dr. Debra Inman and Dr. Jack Vognsen, who based their opinions on personal interviews with defendant and the records of his prior convictions in Illinois, Florida, and Sacramento. Inman and Vognsen evaluated defendant in terms of the SVPA criteria describing an SVP,[2] and concluded that defendant (1) suffered from a diagnosed mental disorder—pedophilia with attraction to males, nonexclusive; (2) had committed sexually violent offenses against more than two victims in the past; and (3) was a danger to others because he was likely to engage in sexually violent behavior if released.

Defendant testified over objection as part of the district attorney's case-in-chief. He denied the factual basis for some of his convictions, but admitted he was sexually attracted to little boys 40 years ago. Defendant generally characterized his sexual relationships with the young boys as private matters between willing participants. However, he testified he no longer believed that kind of sexual behavior was normal, and denied being sexually attracted to little boys at the time of trial due to his age and medical condition.

Dr. Theodore Donaldson, defendant's expert, disagreed with Inman and Vognsen that defendant had a diagnosable mental disorder. He rejected the conclusion defendant was a pedophile because, in his view, defendant did not believe his conduct was wrong, and willfully engaged in it. Although Donaldson scored defendant the same as Inman and Vognsen on the Static-99 test for recidivism risk, he questioned the usefulness of long-term risk assessment in defendant's case. Donaldson doubted defendant would be a risk for another 15 years due to his age and physical condition.

Defendant also presented the testimony of a soon-to-retire correctional officer, a retired correctional officer, and a former inmate-turned-pastor, all of whom knew defendant in prison. Each testified to his willingness to provide defendant with support if he were released to the community.

After considering the evidence and argument by counsel, the court found beyond a reasonable doubt that defendant was an SVP. This appeal ensued.

---

[2]At the time of the hearing, the SVPA defined a "sexually violent predator" as "a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (Former § 6600, subd. (a).)

DISCUSSION

I

*Collateral Estoppel*

 Defendant argues the 1982 determination that he was not an MDSO, and not amenable to treatment, bars relitigation of the issue of his mental health in the SVPA proceedings. He raised the issue for the first time in an unsuccessful motion to dismiss the district attorney's petition. We summarily denied defendant's petition for writ of habeas corpus. (*In re Carmony* (Mar. 31, 2000, C035217).)[3] Defendant renewed the issue for the record as a continuing objection at trial. For reasons we explain, the 1982 finding is not entitled to collateral estoppel effect in the current proceedings.

 Under collateral estoppel, an issue tried and determined in one proceeding is given conclusive effect in subsequent litigation between the same parties or their privies. (*Perez v. City of San Bruno* (1980) 27 Cal.3d 875, 883 [168 Cal.Rptr. 114, 616 P.2d 1287]; *Sutphin v. Speik* (1940) 15 Cal.2d 195, 202 [99 P.2d 652].) However, the estoppel effect of a judgment extends only to the facts in issue as they existed at the time the prior judgment was rendered. (*California Emp. etc. Com. v. Matcovich* (1946) 74 Cal.App.2d 398, 404 [168 P.2d 702].) Some issues are not static, that is, they are not fixed and permanent in their nature. When a fact, condition, status, right, or title is not fixed and permanent in nature, then an adjudication is conclusive as to the issue at the time of its rendition, but is not conclusive as to that issue at some later time. (*Lunt v. Boris* (1948) 87 Cal.App.2d 694, 695 [197 P.2d 568].) This principle is applied in numerous California cases.

*Hurd v. Albert* (1931) 214 Cal. 15 [3 P.2d 545, 76 A.L.R. 1348] involved an action to enforce a restrictive covenant against the owner of real property. The court said that a court of equity will not enforce a restrictive covenant by injunction if a change in the character of the surrounding neighborhood would make it oppressive and inequitable to do so. (*Id.* at p. 23.) The court held that a 1923 judgment upholding the restrictive covenant did not preclude a 1928 decision that the property owner should be relieved of the restriction. It explained that the doctrine of claim or issue preclusion "was never intended to operate so as to prevent a re-examination of the same question between the same parties where, in the interval between the first and second actions, the facts have materially changed or new facts have occurred which may have altered the legal rights or relations of the litigants." (*Id.* at p. 26.) Moreover, it is appropriate "for the court to consider,

---

[3] We take judicial notice of this court's record in defendant's habeas corpus petition. (Evid. Code, §§ 452, subd. (d), 459.)

not only the facts that have occurred since the prior suit, but it may and should consider all the facts that exist, both prior and subsequent to the first action, so as to determine properly what effect all of the facts, as they exist at the time of the second trial, have on the rights of the parties." (*Ibid.*)

Similarly, in *People v. Ocean Shore Railroad* (1948) 32 Cal.2d 406, 419 [196 P.2d 570, 6 A.L.R.2d 1179], the court held that a prior judgment that determined the railroad had not abandoned a right-of-way was not a bar to a subsequent judgment that found abandonment. It explained that the court had "evidence of subsequent facts which, when considered with the prior circumstances, would support a finding of intent to abandon even though we accept as controlling the determination of that case that there had been no abandonment when that action was commenced in 1922." (*Ibid.*)

██ The limitation on collateral estoppel in changed circumstances does not apply simply because a party claims to have discovered new evidence that would make an original claim more persuasive. (See *Evans v. Celotex Corp.* (1987) 194 Cal.App.3d 741, 748 [238 Cal.Rptr. 259].) Instead, the limitation is restricted to those situations in which the rights of the parties are not static, but depend upon a current assessment of all the facts in light of applicable law. ██ Having carefully reviewed circumstances of the case before us, we conclude collateral estoppel does not apply in light of the changeable nature of a person's mental health and dangerousness, and the SVPA's emphasis on his or her current, continuing threat to society.

Although there are similarities in the findings made under the Mentally Disordered Sex Offenders Act (MDSO Act) and the SVPA, we conclude the different statutory purposes and procedural settings create different circumstances that require litigation of defendant's current mental condition in the SVPA proceedings.

First, the purposes of the MDSO Act (former § 6300 et seq.) differ from those of the SVPA. "The [MDSO] Act's obvious purpose is to protect the public from the violent propensities of certain mentally disordered sex offenders who are convicted of crime, by confining them during such period as they continue to be a danger to society, and by care and treatment calculated to eliminate their antisocial compulsions. [Citations.] But the Act neither excuses nor mitigates an offender's criminal conduct. Although committed as a mentally disordered sex offender, he may nevertheless be held penally responsible for the crime of which he was convicted. 'When the proceedings relating to commitment as a mentally disordered sex offender have run their course, the criminal case may be resumed and sentence imposed.'" (*People v. Oglesby* (1977) 67 Cal.App.3d 34, 38 [135 Cal.Rptr.

640]; see also *People v. Allen* (1973) 29 Cal.App.3d 932, 938 [106 Cal.Rptr. 43].)

In contrast, the SVPA places overriding emphasis on a person's *current* mental health and dangerousness immediately prior to his or her release on parole. The uncodified statement of intent reads: "The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they are incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society. [¶] The Legislature further finds and declares that while these individuals have been duly punished for their criminal acts, they are, if adjudicated sexually violent predators, a continuing threat to society. The continuing danger posed by these individuals and the continuing basis for their judicial commitment is a currently diagnosed mental disorder which predisposes them to engage in sexually violent criminal behavior. It is the intent of the Legislature that these individuals be committed and treated for their disorders only as long as the disorders persist and not for any punitive purposes." (Stats. 1995, ch. 762, § 1 and ch. 763, § 1.)

The different emphases revealed in these statements of purpose are reflected in timing of a court's determination that an individual is an MDSO or SVP. Proceedings under the MDSO Act—to determine whether the defendant should be imprisoned or committed to a mental health facility for treatment—commence after conviction of a criminal offense, but usually before sentencing. "When a person is convicted of any sex offense, the trial judge, on his own motion, or on motion of the prosecuting attorney, or on application by affidavit by or on behalf of the defendant, if it appears to the satisfaction of the court that there is probable cause for believing such a person is a mentally disordered sex offender within the meaning of this chapter, may adjourn the proceeding or suspend the sentence, as the case may be, and may certify the person for hearing and examination by the superior court of the county to determine whether the person is a mentally disordered sex offender within the meaning of this article." (Former § 6302, subd. (a).) Evaluation is triggered by the defendant's most recent criminal conduct. (See former § 6304; *People v. O'Lea* (1971) 17 Cal.App.3d 834, 838 [95 Cal.Rptr. 287].)

The SVPA proceedings—to determine whether the inmate should be committed to a mental health facility as a continuing threat to society—occur at the end of the inmate's prison term. The Department of Corrections must refer the inmate for evaluation at least six months before his or her release date. (§ 6601, subd. (a)(1).) Evaluation is triggered by the Department of Corrections' determination that the inmate is an SVP, which necessarily includes his or her prior conviction of a sexually violent offense or offenses against two or more victims. (§§ 6600, subd. (a)(1), 6601, subd. (a)(1).) ▮ The predicate offense or offenses need not include those for which the inmate is currently serving a prison sentence. (See *People v. Torres* (2001) 25 Cal.4th 680, 683-684 [106 Cal.Rptr.2d 824, 22 P.3d 871].) "The standardized assessment protocol [followed by the two examining psychiatrists or psychologists] shall require assessment of diagnosable mental disorders, *as well as various factors known to be associated with the risk of reoffense among sex offenders.* Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder." (§ 6601, subd. (c), italics added.) ▮ Evaluation under the SVPA is by its terms broader than that under the MDSO Act, taking into consideration the inmate's entire criminal history, including, but not limited to, the required sexually violent offense against two or more victims. Where release from prison is imminent, risk of reoffense is an important factor for the trier of fact to consider in determining whether the inmate has a currently diagnosed mental disorder "that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).)

Although predicate offenses must be proved and may be considered, they play a limited role in the SVP determination: "Jurors shall be admonished that they may not find a person a sexually violent predator based on prior offenses absent relevant evidence of a currently diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(3); see *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1145 [81 Cal.Rptr.2d 492, 969 P.2d 584].) Indeed, if the SVPA did not place pivotal emphasis on the person's current mental condition and dangerousness, it would likely be found unconstitutional. (See *id.* at pp. 1159-1161.)

In light of the changeable nature of a person's mental health and dangerousness, and the SVPA's emphasis on a person's current mental condition and continuing threat to society, we believe it inconsistent with the legislative intent to give a 20-year-old MDSO finding conclusive effect in the current SVPA proceeding. ▮ The doctrines of res judicata and collateral

estoppel are not generally considered to be constitutional rules, and the Legislature may abrogate them in appropriate circumstances. (See *Mueller v. Walker* (1985) 167 Cal.App.3d 600, 607 [213 Cal.Rptr. 442].) We find implicit legislative abrogation of collateral estoppel here.

■ Accordingly, we conclude a prior finding that defendant was *not* an MDSO is relevant, but not conclusive, on the question whether defendant suffers from a currently diagnosed mental disorder for purposes of the SVPA. The prior finding therefore does not bar determination of defendant's present mental condition in this case.

## II

### *Interviews by the Psychologists*

■ The court overruled defendant's objection to admission of the psychological reports at the probable cause hearing on the district attorney's petition. Defendant had argued that: (1) he received no advance notice that he was being evaluated as an SVP; (2) he was coerced into making statements to the psychologists; and (3) he was deprived of the right to advice of counsel before proceeding with the interviews.

On appeal, defendant asserts "due process requires timely and effective written notice, and [he] was entitled to assistance of counsel at all stages of the proceedings, including the evaluations." He complains without elaboration that he was "caught unprepared and unaware" at each stage prior to the probable cause hearing. We conclude there was no error.

The transfer of a prison inmate to a mental hospital for involuntary treatment is a deprivation of liberty that requires due process protection appropriate to the circumstances. (*Vitek v. Jones* (1980) 445 U.S. 480, 493-494 [100 S.Ct. 1254, 1263-1264, 63 L.Ed.2d 552, 565].) In this setting, due process generally includes notice and the availability of legal counsel. (*Id.* at p. 496 [100 S.Ct. at pp. 1265-1266, 63 L.Ed.2d at p. 567].) ■ However, "identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33] (*Mathews*); *Oberholzer v. Commission on*

*Judicial Performance* (1999) 20 Cal.4th 371, 390 [84 Cal.Rptr.2d 466, 975 P.2d 663] *(Oberholzer)*.) Under this analysis, due process is not a fixed theory, and its content varies according to the specific factual context. *(Mathews, supra,* at p. 334 [96 S.Ct. at p. 902, 47 L.Ed.2d at p. 33]; *Oberholzer, supra,* at p. 391, fn. 16.)

 ■ The SVPA expressly provides numerous procedural safeguards. A person subject to commitment is entitled to assistance of counsel at the probable cause hearing and trial. (§§ 6602, 6603, subd. (a).)[4] In addition, he or she is entitled to trial by jury, the right to retain experts to perform an examination on his or her behalf, and access to all relevant medical and psychological records and reports. (§ 6603, subd. (a).) However, nothing in its provisions suggests the Legislature intended to require notice or representation by counsel before an SVP petition is requested or filed.

We conclude due process does not require notice before the Department of Corrections refers an inmate for evaluation by the State Department of Mental Health under section 6601. Until the psychological evaluation is complete, it is unknown whether there are sufficient grounds to pursue the matter further. The State Department of Mental Health forwards the case to the district attorney only after two evaluators agree that the inmate has "a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody." (§ 6601, subd. (d).) Defendant took full advantage of the procedural safeguards provided in sections 6602 and 6603 to challenge the reports submitted by Inman and Vognsen at the probable cause hearing and trial. He does not contend lack of advance notice of the psychological evaluations compromised the accuracy of the court's ultimate findings or led to an erroneous deprivation of his liberty interest.

We also reject defendant's claim the right to counsel should have attached at the time he was interviewed by Inman and Vognsen. The SVPA procedure properly balances defendant's liberty interest against the government's interest in limiting the fiscal and administrative burdens imposed by the

---

[4]At the time of defendant's hearing, section 6602 read, in part: "(a) A judge of the superior court shall review the petition and shall determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release. The person named in the petition shall be entitled to assistance of counsel at the probable cause hearing. . . ."

Section 6603, subdivision (a) read: "A person subject to this article shall be entitled to a trial by jury, to the assistance of counsel, to the right to retain experts or professional persons to perform an examination on his or her behalf, and to have access to all relevant medical and psychological records and reports. In the case of a person who is indigent, the court shall appoint counsel to assist him or her, and, upon the person's request, assist the person in obtaining an expert or professional person to perform an examination or participate in the trial on the person's behalf."

SVPA. The statute requires the Department of Corrections to refer an inmate for evaluation at least six months before the end of his or her prison term. (§ 6601, subd. (a).) Although the reasons are unclear, Inman and Vognsen did not interview defendant until a month before the district attorney filed the petition to commit defendant as an SVP, and approximately 11 weeks before his scheduled parole date. To require a court appearance for appointment of counsel before the interviews are conducted, and before a petition is filed, would cause delay and increase the administrative burden at a preliminary stage in the SVPA proceedings without increasing the accuracy of the process. Here, the court appointed counsel for defendant more than a month before the probable cause hearing. Defendant utilized counsel, a psychological expert, and the relevant records and reports provided under sections 6602 and 6603 to challenge the psychological reports at meaningful stages in the proceedings. Due process requires nothing more.

## III-VIII*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The order is affirmed.

Scotland, P. J., and Davis, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 28, 2002.

*See footnote, *ante*, page 317.