[No. D042016. Fourth Dist., Div. One. May 13, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID SALOMON MUNOZ, Defendant and Appellant.

COUNSEL

Gregory L. Rickard, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Lilia E. Garcia, Peter Quon, Jr., and Douglas C. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BENKE, Acting P. J.—David Salomon Munoz was committed to the Department of Mental Health as a sexually violent predator (SVP) pursuant to Welfare and Institutions Code[1] section 6600 et seq. He appeals, arguing the trial court erred in admitting evidence concerning his prior SVP commitments.[2]

FACTS

A. *Petitioner's Case*

The District Attorney of San Diego County (petitioner) filed a petition seeking the continued involuntary treatment of appellant as an SVP. The petition noted appellant's conviction for qualifying offenses, his two prior commitments as an SVP and asked that his commitment be extended.

In June 1988 a 12-year-old female child was in a sleeping bag at appellant's parent's home. Appellant kissed her, touched her breasts and rubbed her genital area.

In September 1988 appellant entered an apartment where a 17-year-old female child was sleeping with her three sisters. He stroked the young woman's hair and face. When she and her sisters were awakened and saw appellant, they screamed. He left.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] The commitment that is the basis for this appeal has expired and the issues raised are, therefore, moot. We will not, however, dismiss the appeal since some of the legal issues to be decided are of broad public interest and are likely to recur. (See *Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1202, fn. 8 [31 Cal.Rptr.2d 776, 875 P.2d 1279]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 642, 652–653, pp. 669–670, 682–689.)

In June 1992 appellant entered a home, picked up a two-year-old female child from a couch, licked her vagina, unsuccessfully attempted to put his penis in her vagina and then placed his penis in her mouth. When the child began to cry, appellant put her down and left.

Dr. Charlene Steen, a psychologist, reviewed materials concerning appellant and interviewed him. She concluded appellant suffered from a mental disorder called paraphilia, a condition manifested by deviant sexual behavior that predisposed him to the commission of criminal sexual acts. Dr. Steen stated appellant was a pedophile, a subcategory of paraphilia, but that the object of his deviant sexual behavior might not be confined solely to children.

Dr. Steen stated the disorder, which affects volitional capacity, cannot be cured but can be controlled with the use of psychotherapy. She noted appellant had taken steps to control his behavior but had not yet dealt with his core disorder and was in need of additional and more specific treatment. That treatment was available where appellant was incarcerated but he refused to participate in the program. Dr. Steen noted appellant's paraphilia was exacerbated by other problems: for example, his substance abuse and his antisocial and borderline personality disorders. She concluded appellant had great difficulty controlling his dangerous behavior and it was likely that he would in the future engage in sexually violent, predatory behavior.

Dr. Jay Seastrunk reviewed materials concerning appellant and was his treating psychiatrist from July 2001 to November 2001. The doctor diagnosed appellant as suffering from paraphilia and concluded he had great difficulty in controlling his deviant behavior. Dr. Seastrunk concluded that if released appellant would likely engage in sexually violent predatory behavior.

Dr. Marlene Cordero was appellant's treating psychiatrist at Atascadero State Hospital from November 2001 to September 2002. During that time appellant refused to participate in any treatment and refused to meet with Dr. Cordero. The doctor noted appellant was verbally abusive and threatening to the staff.

B. *Appellant's Case*

Dr. Ricardo Weinstein, a psychologist, reviewed materials concerning appellant's history and administered a battery of psychological tests to him. Dr. Weinstein concluded that while appellant had committed sexual and bizarre criminal acts, he did not suffer from paraphilia or pedophilia. He concluded appellant was not an SVP because he had the capacity to control his behavior.

Dr. Raymond Anderson, a psychologist, reviewed materials concerning appellant and interviewed him. Dr. Anderson concluded appellant did not suffer from a mental disorder such as pedophilia that predisposed him to commit sexual offenses and had reasonably good impulse controls. Rather, he concluded appellant's commission of sexual offenses was the result of his drug abuse in combination with his attention deficit hyperactivity disorder.

Appellant testified and explained why he had not participated in some treatment programs at the state hospital. Appellant believed his sexual offenses were the result of his abuse of drugs and alcohol. Appellant believed he had that problem under control.

## DISCUSSION

Appellant argues the trial court erred in allowing evidence concerning and argument about his two prior SVP commitments. Appellant notes that pursuant to section 6600, subdivision (a)(3), a person may not be found an SVP absent evidence of a currently diagnosed mental disorder making it likely he or she would engage in sexually violent criminal behavior. He argues the admission of evidence of prior SVP commitments was irrelevant to that determination and tended to switch the burden of proof to him to prove he was no longer an SVP.

### A. *Background*

Before trial, the court and parties discussed the admission of evidence that appellant on two prior occasions was committed as an SVP. It was petitioner's position those commitments were part of the history of the case and admissible. Appellant replied petitioner was required to prove independently at each commitment proceeding the elements necessary to establish he was an SVP. Appellant argued if evidence of his prior commitments was admitted, a danger existed the jury would not address the core elements of his SVP status, e.g., whether he suffered from a mental disorder, and would simply consider whether there had been any change in his mental status and level of dangerousness since his last commitment.

The court stated it did not understand petitioner's position to be that the fact of the prior commitments relieved it of the burden to independently prove each element required to find appellant an SVP. The court stated such evidence tended to explain why appellant was incarcerated at the state hospital. The court stated it would admit evidence of appellant's prior commitments but only for the purpose of showing such history.

During direct examination of Dr. Steen, petitioner noted that appellant was committed to the state hospital first in 1998 and again in 2000. Dr. Steen testified she had reviewed the records concerning those commitments. Petitioner asked the doctor if she was "assigned to evaluate essentially [appellant's] progress and to determine whether or not he continues to meet that criteria under the SVP law?" Dr. Steen stated "Yes."

Through his own testimony and that of his witnesses, appellant denied he suffered from a mental disorder and argued it was not likely he would engage in sexually violent predatory criminal behavior. Appellant's claim was that his sex offenses were not the result of a mental disorder predisposing him to such conduct but were rather the result of alcohol and drug abuse that caused him to make bad decisions.

On cross-examination petitioner questioned appellant concerning his claim he did not have a mental disorder that predisposed him to the commission of sex offenses against children. Petitioner asked appellant if he held that belief in the years following his conviction in 1992. He stated he did. Petitioner asked if in 1998, when the first petition was filed, he did not believe he had such a predisposition, why he did not contest the findings of the doctors that he did. Appellant stated he was not prepared to testify at that time. Petitioner noted that in 1998 appellant had not contested the conclusions of experts that he was a pedophile. Defense counsel objected on the ground petitioner's questioning misstated the legal history of the case. The trial court replied it knew nothing about the 1998 legal history of the case. It first sustained the objection and then told petitioner to rephrase the question.

Petitioner asked appellant if by 1992 he concluded he had no predisposition to commit sexual offenses against children, why in 1998 he "submitted on the reports by the experts that said [he] was likely to do it again." When appellant stated he did not remember the case, petitioner handed him a minute order from the 1998 proceeding. Petitioner asked if his present counsel was also his counsel then. Appellant stated, "Yes." After appellant reviewed the minute order, petitioner asked appellant if he now remembered not contesting the findings of the doctors that he was a pedophile and that he was likely to reoffend. He stated that he did. Petitioner again asked why, if after 1992 he did not believe he had a mental disorder that predisposed him to sexual offenses, appellant did not contest the issue in 1998. Defense counsel objected petitioner was misrepresenting what appellant had done. The objection was overruled. Appellant stated at that time he was unable to take the stand. Petitioner asked if he was aware in 1998 that he had a right to trial on the issue. Appellant stated that he did. When petitioner asked if appellant

so understood, why then was he testifying that he didn't have a right to testify. Counsel objected, arguing petitioner was misstating appellant's testimony. The objection was sustained. Petitioner asked the same question, counsel interposed the same objection and the trial court made the same ruling.

The minute order to which petitioner referred was admitted in evidence. It notes that appellant personally waived his right to trial and wished to submit the matter on all documents before the court. The minute order notes that after reviewing those documents the court committed appellant to the state hospital as an SVP.

Petitioner then moved on to the 2000 recommitment proceeding. In response to questioning, appellant stated that in that proceeding he offered the testimony of a doctor. Appellant agreed that neither of the doctors who testified in the present case testified in the 2000 proceeding. An objection was interposed that such cross-examination was improper. The objection was overruled. Petitioner testified that he took the stand in that proceeding.

On redirect examination appellant stated that when he waived trial on the 1998 petition, it was his understanding that he was admitting nothing. Appellant stated he did not want to testify at that proceeding because he was nervous and was embarrassed to testify about his prior conduct.

Appellant testified that he contested the matter in 2000. He stated that he was aware that since 2000 there had been new case authority that he believed was favorable to him.

At the end of opening argument, petitioner argued appellant was a sexually violent predator and there had been no change in him during his two years at the state hospital.

In closing argument petitioner told the jury that four years before it had petitioned for appellant to be committed as an SVP and noted appellant did not contest the findings of the evaluators and did not contest the claim that he was an SVP. Petitioner noted appellant's testimony that he had never had a mental condition qualifying him for SVP status but noted that in 1998 he did not contest the petition seeking he be committed as an SVP.

B. *Discussion*

In addressing appellant's argument concerning the admission of evidence of prior commitments, it is useful to first define the nature of the SVP

recommitment process, determine what the trier of fact must find, and how evidence of prior SVP determinations relates o the making of those findings.

As we will explain, an SVP extension hearing is not a review hearing. It is not the mere continuation of an earlier proceeding and, except in a limited sense, the petitioner cannot rely on findings made at earlier SVP hearings to shape the issues or to prove SVP status in a current proceeding. An SVP extension hearing is a new and independent proceeding at which, with limited exceptions, the petitioner must prove the defendant meets the criteria, including that he or she has a currently diagnosed mental disorder that renders the person dangerous.

■ The process necessary for initially declaring a prisoner an SVP is an involved and demanding one. Two psychologists or psychiatrists must after an evaluation agree based on a standard assessment protocol that the prisoner is an SVP. If they agree, the Director of Mental Health must request that the designated attorney in the county in which the prisoner was convicted file a petition for commitment. If that attorney concurs in the recommendation, a petition is filed. (§ 6601.)

■ Once filed, the petition must be reviewed by a judge of the superior court to determine if it contains sufficient facts to constitute probable cause to believe that the prisoner is likely to engage in sexually violent predatory criminal behavior upon release. (§ 6601.5.)

■ If the court so determines, a full, adversarial preliminary hearing is held. The petition is dismissed unless the court determines there is probable cause to believe that the prisoner is likely to engage in sexually violent predatory criminal behavior upon release. (§ 6602, subd. (a).) If the court so determines, the matter is set for trial. Either party may demand a jury trial, the prisoner is entitled to counsel, to retain experts, and have access to all relevant medical and psychological reports and records. The prisoner must be found to be an SVP beyond a reasonable doubt by a unanimous jury. (§§ 6603, subds. (a), (b), (e), (f), 6604.)

■ These same demanding procedures, including new evaluations, preliminary review by the trial court, preliminary hearing and trial, must be complied with in extending an SVP commitment. (§ 6604.1, subd. (b); *Turner v. Superior Court* (2003) 105 Cal.App.4th 1046, 1055 [130 Cal.Rptr.2d 300] (*Turner*); *People v. Badura* (2002) 95 Cal.App.4th 1218, 1223 [116 Cal.Rptr.2d 336]; *Cooley v. Superior Court* (2001) 89 Cal.App.4th 785, 787–792 [107 Cal.Rptr.2d 724]; *People v. Superior Court (Gary)* (2000) 85 Cal.App.4th 207, 213–218 [101 Cal.Rptr.2d 874]; *Butler v. Superior Court* (2000) 78 Cal.App.4th 1171, 1180 [93 Cal.Rptr.2d 468].)

■ This requirement for what is essentially a new determination of SVP status every two years arises from the logical and constitutional requirement that any SVP commitment be based on a *currently* diagnosed mental disorder which makes it likely the person will engage in sexually violent criminal behavior. This requirement of currency requires evaluations done near the time of the recommitment and a new determination by a trier of fact that the defendant is an SVP. (See generally § 6600, subd. (a)(1), (3); *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1153, fn. 20 [81 Cal.Rptr.2d 492, 969 P.2d 584]; *People v. Carmony* (2002) 99 Cal.App.4th 317, 325 [120 Cal.Rptr.2d 896].)

The logical and constitutional necessity for an independent finding of a current mental disorder rendering the defendant dangerous arises not simply from the serious consequences that result from the finding but from the variability of such disorders and their effect on predictions of behavior. While it is certainly the case that the fact of a prior SVP commitment has some relevance in determining whether a defendant has a currently diagnosed mental disorder, that relevance is limited and great care must be taken in admitting evidence concerning the prior commitment.

■ It is tempting in the SVP recommitment context to characterize the issue as whether anything has changed since the last determination such that the defendant is no longer an SVP. This, however, is a potentially prejudicial mischaracterization. Petitioner is required in a recommitment proceeding to prove beyond a reasonable doubt that the defendant is an SVP, not that he is still an SVP. The danger in this mischaracterization is that it may suggest to a jury that the defendant must prove he is no longer an SVP; in any case it certainly lessens petitioner's burden by improperly establishing a datum of mental disorder and dangerousness. As we have concluded, each recommitment requires petitioner independently to prove that the defendant has a currently diagnosed mental disorder making him or her a danger. The task is not simply to judge changes in the defendant's mental state.

Having concluded that the fact of a prior SVP commitment does not change the fundamental issues to be litigated in extended commitment proceedings, the question that remains is of what evidentiary significance is that prior finding.

■ While it is proper, when relevant, to take judicial notice of the prior *finding*, it is improper to take notice of the truth of that finding. (See *Kilroy v. State* (2004) 119 Cal.App.4th 140, 145–148 [14 Cal.Rptr.3d 109]; *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882, 885 [110 Cal.Rptr.2d 877]; *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1565, 1568–1569 [8 Cal.Rptr.2d 552].) Thus, if there is some *legal*

consequence to the fact of a prior SVP finding, a trier of fact may take judicial notice of it. However, the factual truth of any prior determination that the defendant then had a mental disorder and was as a result dangerous is not the proper subject of judicial notice.

■ The prior finding has no res judicata effect with regard to the issues of the defendant's mental condition or dangerousness since, as noted above, it dealt with a different issue, i.e., whether the defendant then had a *currently* diagnosed mental disorder rendering him dangerous. (*Turner, supra,* 105 Cal.App.4th at pp. 1057–1058; *People v. Carmony, supra,* 99 Cal.App.4th at pp. 322–326.)[3]

In some unusual situations the fact of a prior suit finding may be significant. In *Turner, supra,* 105 Cal.App.4th at pages 1055–1060, this court, based on important due process considerations, concluded that under some circumstances the fact of a prior finding in an SVP proceeding favorable to a defendant was admissible, and indeed affected the proof required to prove a defendant an SVP, in a later proceeding. (See also *People v. Carmony, supra,* 99 Cal.App.4th at p. 326.)

In *Turner* the defendant was committed as an SVP in 1998. Two years later in an extension proceeding, a jury found that while the defendant had a mental condition, he was not dangerous. The defendant was released on parole. Three months later the defendant was taken into custody for a minor parole violation. His parole was revoked and he was returned to prison. A new petition was filed, seeking to commit the defendant as an SVP. Turner moved for dismissal of the petition, arguing the recent jury determination that he was not an SVP was binding in the subsequent proceeding. At the preliminary hearing, the trial court rejected the defendant's claim of collateral estoppel. Defendant sought writ relief in this court. (*Turner, supra,* 105 Cal.App.4th at pp. 1051–1054.)

We concluded the prior SVP determination did not collaterally estop litigation of the defendant's mental condition in the later proceeding since the issues were necessarily different, i.e., the issue in each was the defendant's then-current mental condition. However, we rejected the state's argument that the prior finding had no relevance to the later proceeding. We noted our concern that if there was no relevance to the prior determination, a danger existed that the state might file successive petitions seeking to commit a defendant as an SVP on essentially the same evidence until it succeeded in

---

[3] An additional element necessary for a finding that a person is a sexually violent predator is that he or she has been convicted of a sexually violent offense against two or more victims. A prior finding of this fact is res judicata in any later SVP proceeding. (See *Turner, supra,* 105 Cal.App.4th at pp. 1057–1058; *People v. Carmony, supra,* 99 Cal.App.4th at pp. 322–326.)

committing him. We concluded that the prior factual finding that the defendant was not dangerous had "strong probative value as to the precise issue to be decided in the current proceeding." (*Turner, supra,* 105 Cal.App.4th at p. 1059.) We stated: "In determining whether [the defendant] is likely to commit sexually violent predatory acts [upon release], it is certainly relevant to know that a jury found it was not likely that he would commit sexually violent predatory acts when he was released eight months earlier . . . ." (*Id.* at pp. 1057–1059.)

We concluded that the state could not relitigate in the subsequent proceeding the issue of whether it was likely he would reoffend on release. More specifically, we stated that to establish probable cause supporting an SVP commitment, evidence had to establish a material change of circumstances since the earlier proceeding such that the defendant is now dangerous. (*Turner, supra,* 105 Cal.App.4th at pp. 1059–1060.)

This holding in *Turner* does not suggest the converse, i.e., that prior factual findings in an SVP hearing *unfavorable* to the defendant are admissible in a later SVP hearing. In *Turner* the first jury found that Turner was not dangerous but it also found he suffered from a mental condition. The *Turner* opinion does not hold that the mental condition finding was admissible in a subsequent SVP proceeding to prove appellant *still* suffered from that condition.

It may be impossible to avoid the jury's learning that the defendant has already been committed as an SVP, e.g., it may be necessary for experts to discuss the defendant's treatment and behavior while in the state hospital. Still, it is necessary that nothing be done that suggests to the jury that its task is to compare the defendant's present mental status with an earlier finding that he or she is an SVP. As we have noted each SVP hearing addresses the defendant's current mental state. Nothing must be done to suggest the defendant is required to prove he is no longer an SVP or to effectively lessen the state's burden by establishing a datum of mental disorder and dangerousness.

█ Unfortunately in this case, that is precisely what happened. The manner in which the prosecutor questioned witnesses, the evidence the trial court admitted, and the manner in which petitioner argued the case suggested that the issue was whether anything had changed since appellant's prior SVP commitment. We conclude that given the contradictory evidence in this case, it is reasonably probable that but for these errors a finding more favorable to appellant might have been returned. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The order committing appellant as an sexually violent predator is reversed.[4]

Huffman, J., and McDonald, J., concurred.

A petition for a rehearing was denied June 6, 2005.

---

[4] It is not necessary that we consider appellant's other claims of error.