Filed 6/24/13  P. v. Rose CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C067448 |
| Plaintiff and Respondent, | (Super. Ct. No. 96F09863) |
| v. | |
| WARREN DAVID ROSE, JR., | |
| Defendant and Appellant. | |

In the underlying civil commitment proceedings, the trial court allowed the prosecution to relitigate the finding that Warren David Rose, Jr., was not a sexually violent predator (SVP) at the time of his prior release and failed to instruct the jury it must find changed circumstances to establish that he currently suffers from a diagnosed mental disorder that makes him dangerous and likely to engage in sexually violent predatory criminal behavior upon release.  (Welf. & Inst. Code, § 6602; *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 902.)  The court disallowed evidence of a 1999 court finding that he was not an SVP and a 2001 jury finding that he was, based on an Evidence Code section 352 determination that the jury would be confused, misled, or distracted.

1

Fundamental principles of res judicata and collateral estoppel are not at the mercy of Evidence Code section 352. By excluding the evidence and failing to instruct the jury on the prosecution's burden of proof, the court relegated the collateral estoppel principles embodied in *Turner v. Superior Court* (2003) 105 Cal.App.4th 1046 (*Turner*) and *People v. Munoz* (2005) 129 Cal.App.4th 421 (*Munoz*) to the vagaries of a section 352 balancing act, an error that was not harmless beyond a reasonable doubt. We reject, however, defendant's challenge to the constitutionality of the 2006 amendments to the Sexually Violent Predators Act (SVPA; Welf. & Inst. Code, § 6600 et seq.)[1] We reverse the judgment of commitment and remand the matter to the trial court. Rose is entitled to a jury trial in accordance with the views expressed herein.

## FACTS

We extract the relevant facts from 1982 through 2003 from an earlier opinion. (*People v. Rose* (Feb. 28, 2003, C039548) [nonpub. opn.] (*Rose I*).)

"In 1982, defendant was 27 years old and serving in the United States Navy in Guam when he committed violent sexual offenses against three eight-year-old girls. He was court martialed for these offenses and sentenced to approximately seven years in federal prison. He was paroled from federal custody in 1990.

"Defendant violated the terms of his parole by contacting, hitting, and twice raping his ex-girlfriend who had told him she was no longer interested in being involved with him. He was returned to federal prison for five years and released in 1996.

"Less than a year after defendant's release from prison, he reoffended by committing a lewd act on a seven-year-old girl whom he was babysitting. He was charged and convicted of violating Penal Code section 288, subdivision (a) and sentenced to three year[s'] imprisonment.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise designated.

"On June 8, 1999, prior to his completion of his three-year sentence, the prosecution filed a petition to have him committed as an SVP, and attached two psychological evaluations prepared by clinical psychologists Drs. Craig Updegrove and Dana E. Putnam. After a court trial, the petition was found not true.

"Defendant completed his term of imprisonment and was released from prison in 2000. He then promptly violated the terms of his parole by failing to keep a log of his behavior and whereabouts, providing false information to his parole officer, and having contact with minors. On July 26, 2000, the prosecution filed a second SVP petition, attaching three psychological evaluations, the first evaluation prepared by Dr. Putnam and two new evaluations also prepared by Drs. Putnam and Updegrove.

"Drs. Putnam and Updegrove testified at defendant's jury trial and gave similar diagnoses. They both opined that defendant was predatory within the meaning of the SVPA and that he suffered from a diagnosed mental disorder of pedophilia as defined by the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) (DSM-IV-TR) [fn. omitted] and section 6600. Dr. Updegrove testified that defendant's disorder affects his emotional and volitional capacity and his impulse control and predisposes him to commit criminal sexual acts, so that he is not able to control himself from acting on his urges. Both doctors concluded defendant was likely to commit sexually violent predatory acts in the future and that he fit the criteria of an SVP. Dr. Putnam defined 'likely' as greater than 50 percent. Both doctors estimated that defendant's likelihood of reconviction was 33 percent at five years, 38 percent at 10 years, and 52 percent at 15 years.

"The jury found defendant to be a sexually violent predator and the trial court committed him to the custody of the [Department of Mental Health] for a period of two years. (§§ 6604, 6604.1, subd. (a).)"

Defendant's commitment expired on October 10, 2003. The record is quite splotchy about the petitions filed and the continuances granted between 2003 and the jury

3

trial in January 2011. An amended petition for an indeterminate extension of the commitment of a sexually violent offender was filed in April 2007. Suffice it to say that in 2010 defendant moved to dismiss the petition, arguing, "The prejudice to the respondent here is plain; respondent has been incarcerated, based on this petition alone for over seven years without going to trial after the expiration of his prior commitment." There were no new allegations of sexual misconduct or predatory behavior.

Trial commenced in 2011. Relying on *Turner, supra*, 105 Cal.App.4th 1046, defendant brought a motion in limine to introduce evidence that in 1999 the court found he was not an SVP. The trial court, acknowledging that pursuant to *Munoz, supra*, 129 Cal.App.4th 421 evidence that a jury found he was an SVP in 2001 was not admissible, concluded it would mislead the jury to admit the not-true finding without apprising the jury of the subsequent true finding. The court balanced the probative value of the not-true finding against the potential prejudice and, pursuant to Evidence Code section 352, excluded the evidence of both findings.

The prosecution's case was built on the facts we described in the appeal of the 2001 jury finding. Based on those facts, Dr. Jesus Padilla opined that defendant remained an SVP likely to reoffend. A defense expert disputed the diagnosis and prognosis for future dangerousness. Defendant testified that he did not participate in the treatment program in which approximately 150 to 175 of the 1,000 patients at Coalinga State Hospital participate because the doctors favored castration and masturbation therapy; very few, if any, participants were ever released; and patient disclosures were used against them in court. Employees at the hospital testified that defendant was a model patient. He took advantage of educational programs, maintained friendships, never used drugs or contraband, and avoided trouble.

The jury found defendant was an SVP within the meaning of section 6600, subdivision (a). The court committed defendant to the Department of Mental Health for an indeterminate term. Defendant appeals.

4

## DISCUSSION

## I

An SVP is "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) If certain preliminary requirements are met (§ 6601), a petition for commitment can be filed, and if a court finds that there is "probable cause" to believe the named defendant is likely to engage in sexually violent predatory criminal behavior upon release (§ 6602, subd. (a)), a trial is conducted "to determine whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release . . ." (*ibid*). The alleged SVP is entitled to a jury trial, a unanimous verdict, the assistance of counsel, the right to retain experts to perform further evaluations, and access to all relevant medical and psychological reports. (§ 6603, subds. (a), (f).) If a jury finds the allegation true, the SVP is committed to the Department of Mental Health for an indeterminate term of commitment from which the individual can be released if he proves by a preponderance of the evidence that he no longer is an SVP. (§ 6604; *People v. McKee* (2010) 47 Cal.4th 1172, 1186-1187 (*McKee I*).)

Given the fluid and changing nature of mental health, the focus of any extension or recommitment hearing is whether the individual has, at that moment in time, a diagnosed mental disorder and whether he or she is *currently* dangerous. (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1162 (*Hubbart*).) But since many of these individuals are subjected to multiple hearings and multiple findings, the question arose as to whether any of the preceding findings collaterally estopped relitigation of the same issues in subsequent proceedings. In two landmark cases from the Fourth Appellate District, Division One, the court examined the nuances of applying well-established

5

principles of collateral estoppel in civil commitment proceedings. We examine those cases as a prelude to resolution of the issue now before us.

Defendant relies, as he did in the trial court, upon the notable case of *Turner*, *supra*, 105 Cal.App.4th 1046. Turner served 14 years of a combined 25-year sentence, was found to be an SVP, and was committed to Atascadero State Hospital for treatment for two years. The prosecution sought to recommit him for another two years, but a jury found he was not a danger to the health and safety of others and was not likely to engage in acts of sexual violence upon his release. (*Id*. at pp. 1051-1052.) He was released from custody. (*Ibid*.)

A mere three months later, Turner was rearrested for a curfew violation. His parole was revoked and he was returned to custody for six months. While still in custody, the prosecution filed a petition seeking again to commit Turner under the SVPA for another two-year term. (*Turner*, *supra*, 105 Cal.App.4th at p. 1052.) "At the February 2002 probable cause hearing, the district attorney submitted evidence of Turner's 1984 and 1985 qualifying convictions, and reports authored by the two forensic psychologists who had supported the 1998 SVPA petition, Dr. Zinik and Dr. Malinek. These psychologists stated that Turner has a current mental disorder of paraphilia and sexual sadism, and opined that Turner is likely to engage in future sexually violent predatory behavior. Although both Dr. Zinik and Dr. Malinek prepared these reports in connection with the February 2002 probable cause hearing, and referenced events that took place after Turner was placed on parole (i.e., the curfew violation), they reached these conclusions primarily based on facts that had been before the jury in the prior trial when the jury found Turner was not a sexually violent predator." (*Id*. at pp. 1052-1053.)

Turner argued that the finding that he was not an SVP barred the district attorney from filing a new petition at least until he was convicted and sentenced for the commission of a new crime. (*Turner*, *supra*, 105 Cal.App.4th at p. 1056.) The district attorney took the opposite position, that the not-true finding should have no effect

6

whatsoever once Turner was released and subsequently returned to custody. Applying basic principles of collateral estoppel, the Court of Appeal rejected both extreme positions. (*Id*. at pp. 1057-1058.)

We begin with a refresher on collateral estoppel. Collateral estoppel gives conclusive effect to an issue decided in a prior proceeding if " '(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; and (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding.' " (*People v. Davis* (1995) 10 Cal.4th 463, 514-515, fn. 10, quoting *People v. Meredith* (1992) 11 Cal.App.4th 1548, 1556; see *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)

In *Turner*, the court concluded that collateral estoppel principles apply in SVPA proceedings. The court reasoned, "If these principles did not apply, the integrity of the first proceeding could be undermined and there would be serious questions about the fundamental fairness of a scheme that would permit the government to file successive petitions against an individual in the same forum and on the same facts in a proceeding that could potentially result in a complete loss of liberty for that individual." (*Turner*, *supra*, 105 Cal.App.4th at p. 1057.) Although the court held that the district attorney was not forever barred from filing a later petition to show *current* dangerousness at a later time, the prior finding had "strong probative value as to the precise issue to be decided in the current proceeding." (*Id*. at p. 1059.) "Accordingly, to establish probable cause in the subsequent proceeding, the district attorney must present evidence of a change of circumstances, i.e., that despite the fact the individual did not possess the requisite dangerousness in the earlier proceeding, the circumstances have materially changed so that he now possesses that characteristic." (*Id*. at p. 1060.)

The court examined the sufficiency of the evidence of changed circumstances following the prior jury determination that Turner was not an SVP. The court

7

acknowledged that two psychologists referred to Turner's curfew violation but failed to state in their reports whether or how the violation affected the determination that Turner was currently dangerous and likely to reoffend. (*Turner*, *supra*, 105 Cal.App.4th at p. 1062.) The court concluded the prosecution did not meet its burden to show that, in light of the prior jury verdict, "there is a serious and well-founded risk that Turner will engage in sexually violent criminal conduct upon his release." (*Id*. at p. 1061.) The psychologists appeared oblivious to the finding or, at a minimum, to the significance of the finding that Turner was not an SVP. The court explained, "At the very least, the prosecution's supporting reports must contain information showing the evaluating professionals understood and accepted, for purposes of the current diagnosis, the prior jury finding as true, and then explain why despite that prior finding, the facts are sufficiently different so that the individual is now a dangerous person who is likely to reoffend within the meaning of the SVPA." (*Id*. at p. 1062.)

Two years later the same court faced the opposite question. The district attorney filed a petition seeking the continued involuntary treatment of Munoz as an SVP, relying in part on evidence of his two prior commitments. (*Munoz*, *supra*, 129 Cal.App.4th at p. 424.) Munoz objected to evidence and argument about his prior SVP commitments based on the constitutional requirement that any SVP commitment must be based on a *currently* diagnosed mental disorder that makes it likely the person will engage in sexually violent criminal behavior. "The logical and constitutional necessity for an independent finding of a current mental disorder rendering the defendant dangerous arises not simply from the serious consequences that result from the finding but from the variability of such disorders and their effect on predictions of behavior. While it is certainly the case that the fact of a prior SVP commitment has some relevance in determining whether a defendant has a currently diagnosed mental disorder, that relevance is limited and great care must be taken in admitting evidence concerning the prior commitment." (*Id*. at p. 430.)

8

The court acknowledged that a past finding is relevant but it "has no res judicata effect with regard to the issues of the defendant's mental condition or dangerousness since, as noted above, it dealt with a different issue, i.e., whether the defendant then had a *currently* diagnosed mental disorder rendering him dangerous." (*Munoz, supra,* 129 Cal.App.4th at p. 431.) The court distinguished *Turner*, pointing out that it was based on important due process considerations. "[U]nder some circumstances the fact of a prior finding in an SVP proceeding favorable to a defendant was admissible, and indeed affected the proof required to prove a defendant an SVP, in a later proceeding." (*Ibid.*) The court in *Munoz*, citing *Turner*, restated the basic principle that to establish probable cause to support an SVP commitment, the prosecution had to establish a material change of circumstances since the earlier proceeding such that the defendant was now dangerous. (*Id.* at p. 432.) Nevertheless, the court stated: "This holding in *Turner* does not suggest the converse, i.e., that prior factual findings in an SVP hearing *unfavorable* to the defendant are admissible in a later SVP hearing. . . . The *Turner* opinion does not hold that the mental condition finding was admissible in a subsequent SVP proceeding to prove appellant *still* suffered from that condition." (*Ibid.*)

The court appreciated the danger of increasing the defendant's burden of proof. Thus, the court stated that nothing can be done to even suggest that the defendant must prove he was no longer an SVP or to effectively lessen the prosecution's burden of proving he had a mental defect and was currently dangerous. (*Munoz, supra,* 129 Cal.App.4th at p. 432.) The court reversed the order committing Munoz as a sexually violent predator because the evidence and argument "suggested that the issue was whether anything had changed since [his] prior SVP commitment." (*Ibid.*)

The facts before us present a hybrid of *Turner* and *Munoz*. In 1999 the jury found Rose was not an SVP. His next hearing to extend his commitment was held in 2001, before either *Turner* or *Munoz* was decided. Evidence of the not-true finding in 1999 was not admitted in the 2001 proceeding, and the jury was not instructed that it should

9

consider whether there had been a change of circumstances since the not-true finding. In 2001 the jury found Rose was an SVP.

On appeal from the order of commitment, Rose argued that the 2001 petition to commit him to the Department of Mental Health as an SVP was barred under res judicata and collateral estoppel because the issue whether he was an SVP was determined in a trial nine months earlier on a prior petition. In an argument now reminiscent of Turner' s argument, he contended the second petition was barred. We disagreed. We explained, "While the legal criteria under the statute will necessarily be the same in any proceeding under the SVPA, the ultimate factual issue to be determined under the two petitions is different because each one looks to defendant's current mental condition and dangerousness at the time he is nearing his release from prison. That condition may change with the passage of time as will the evidence necessary to prove the changed condition." (*Rose I*, *supra*, C039548.)

Our conclusion that the second petition was not barred by the related doctrines of res judicata and collateral estoppel is consistent with *Turner* as far as it goes. In *Turner*, the court also rejected the defendant's position that one not-true finding bars any subsequent petitions. But the critical holding in *Turner* was whether the issues actually litigated and decided by a jury in one proceeding could be relitigated in the next. Because *Turner* had not yet been decided when Rose's 2001 order of commitment was entered and appealed, the issue before us now was neither raised nor determined.

The trial court believed that the only res judicata/collateral estoppel issues had been resolved in our prior opinion. Applying *Munoz*, the court excluded evidence of the jury's 2001 true finding. Rose argued that the 1999 not-true finding was relevant and admissible under *Turner*. The court held, pursuant to Evidence Code section 352, that the not-true finding also would be excluded. The court explained that it would be unfair and misleading to allow the not-true finding into evidence without also admitting the

10

subsequent true finding. The court erred by utilizing section 352 to dismiss the important and genuine concerns protected by the doctrine of collateral estoppel.

It is true that traditional notions of collateral estoppel are difficult to apply in SVP commitment proceedings. Both *Turner* and *Munoz* recognized that historical information is crucial to an expert's evaluation of a defendant's mental health and that often a jury will learn that a defendant has been hospitalized. Moreover, a defendant's mental health can, and often does, change. Given that a jury is charged with assessing a defendant's *current* mental condition to predict the risk of his *current* dangerousness, collateral estoppel seems unlikely to bar evidence pertinent to the jury's essential task.

But *Turner* makes clear that facts involving any mental defect and dangerousness existing at the time of a prior proceeding finding him not to be an SVP cannot be relitigated. A defendant may become dangerous after a not-true finding due to a change in his mental health or other factors, but a jury cannot simply reach a different conclusion based on the same evidence presented to an earlier jury. *Turner*'s holding is thus consistent with time-honored principles of collateral estoppel designed to protect the individual from "the fundamental [un]fairness of a scheme that would permit the government to file successive petitions against an individual in the same forum and on the same facts" and the justice system from repetitive litigation. (*Turner*, *supra*, 105 Cal.App.4th at p. 1057.)

The court's Evidence Code section 352 analysis violated these basic principles. By excluding evidence of the prior jury's not-true finding, the court allowed the prosecution to relitigate the same issues, and by failing to instruct the jury to focus on how the circumstances had changed since the prior finding, the court disregarded *Turner*. We must determine whether the error was harmless beyond a reasonable doubt.

Here again the factual similarity to *Turner* is striking. In both cases there was little evidence of a change in the defendant's mental condition following the respective jury's not-true finding. Turner violated his curfew; Rose failed to record his whereabouts

11

for a short time in his log and was seen talking to two adolescent boys as he repaired a car.  Neither had committed another sexual offense or otherwise demonstrated dangerous behavior.  In *Turner*, the court concluded there was insufficient evidence to establish probable cause the defendant was likely to engage in sexually violent conduct and directed the trial court to dismiss the petition.

Our case, unlike *Turner*, does not involve writ proceedings challenging a court's determination of probable cause.  And it is true that a considerable period of time has passed since the not-true finding and the finding on appeal.  Nevertheless, the psychologist here, as in *Turner*, did not focus on any changed circumstances other than the fact two adolescent boys were seen watching defendant repair a car.  Given that none of his prior offenses involved boys, he had not committed any offenses or demonstrated dangerous behavior, and the jury was not instructed to focus on any changes since 1999, we cannot say the error was harmless beyond a reasonable doubt.

## II

In 2006 the SVPA was amended by Proposition 83, an initiative measure.  Rose contends the SVPA's provisions for indeterminate terms of commitment are closely analogous to a prison sentence for life, and therefore, pursuant to section 231 of the Code of Civil Procedure, he was entitled to 20, not 10, peremptory challenges.  We reject the analogy.

In a criminal case, the defendant is entitled to 10 peremptory challenges unless the offense with which he or she is charged is punishable by life in prison or death, in which case the number of allowable peremptory challenges is increased to 20.  (Code Civ. Proc., § 231, subd. (a).)  In civil cases or in criminal cases with a maximum term of imprisonment of 90 days or less, the parties are entitled to six challenges.  (Code Civ. Proc., § 231, subds. (b), (c).)  Rose was allowed 10 peremptory challenges.

The question, simply put, is whether a commitment hearing under the SVPA is a civil or criminal proceeding.  The Legislature has been clear.  In enacting the SVPA in

12

1996, the Legislature expressed that no punitive purpose was intended. (*Hubbart*, *supra*, 19 Cal.4th at pp. 1143-1144 & fn. 5.) Rather, the stated purpose of the commitment is to hold the person only so long as his or her mental abnormality creates a danger to others. (§§ 6600, subd. (a), 6605, subd. (a), 6608, subds. (a), (d).) While the commitment may be indeterminate, it is only potentially indefinite. Unlike a criminal defendant sentenced to life in prison, an SVP is entitled to the Department of Mental Health's annual review of his mental condition, and he retains the right to seek release from confinement based on a showing that he no longer poses the requisite danger. (*Ibid*.)

We conclude that the purpose of the SVPA meets neither of the primary objectives of the criminal justice system, retribution nor deterrence. Nor is an indeterminate commitment the functional equivalent of a life term in prison. Rather, a proceeding under the SVPA remains civil in nature. Thus, Rose was not entitled to 20 peremptory challenges pursuant to Code of Civil Procedure section 231 and, in fact, was the beneficiary of four more challenges than he was entitled to.

### III

Rose launches a multifaceted constitutional assault on the SVPA as amended in 2006. Of course, as even he acknowledges, the California Supreme Court rejected all but his equal protection challenge in *McKee*, *supra*, 47 Cal.4th 1172. We are not at liberty to revisit those issues. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Defendant contends that his equal protection rights were violated because SVP's are treated less favorably than those committed under other statutes, such as those addressing mentally disordered offenders (MDO) (Pen. Code, § 2960) and persons found not guilty by reason of insanity (NGI) (Pen. Code, § 1026 et seq.). In *McKee I*, the Supreme Court found that SVP's, MDO's, and NGI's are similarly situated for equal protection purposes because each is involuntarily committed to protect the public from an individual who is dangerously mentally ill. (*McKee I*, *supra*, 47 Cal.4th at pp. 1202-

13

1203, 1207.) The court found no question that after the initial commitment SVP's were treated less favorably because they were given indeterminate commitments with the burden of proving they should be released, whereas MDO's and NGI's were committed for a determinate term and had the right to be released unless the People proved beyond a reasonable doubt that they should be recommitted. (*Ibid*.)

To justify the disparate treatment of SVP's, the Supreme Court in *McKee I* emphasized the People had to show on remand "that, notwithstanding the similarities between SVP's and MDO's, the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society." (*McKee I*, *supra*, 47 Cal.4th at p. 1208.) Whether the People carried their burden under the equal protection clause for such differential treatment was resolved in *People v. McKee* (2012) 207 Cal.App.4th 1325, 1339, 1347-1348 (*McKee II*).

In *McKee II*, Division One of the Fourth Appellate District affirmed the trial court's determination that "the People on remand met their burden to present substantial evidence, including medical and scientific evidence, justifying the amended Act's disparate treatment of SVP's (e.g., by imposing indeterminate terms of civil commitment and placing on them the burden to prove they should be released)." (*McKee II*, *supra*, 207 Cal.App.4th at p. 1347.) The People showed " 'that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely[;] . . . that SVP's pose a greater risk [and unique dangers] to a particularly vulnerable class of victims, such as children'; and that SVP's have diagnostic and treatment differences from MDO's and NGI's, thereby supporting a reasonable perception by the electorate that passed Proposition 83 that the disparate treatment of SVP's under the amended Act is necessary to further the state's compelling interests in public safety and humanely treating the mentally disordered." (*Ibid*.) Based on the above, the court concluded "the disparate treatment of SVP's under the Act is reasonable and factually based and was adequately

14

justified by the People at the evidentiary hearing on remand." (*Id*. at p. 1348.) The SVPA, therefore, did not violate equal protection. (*Ibid*.)

As in *McKee II*, we agree that defendant's equal protection rights were not violated by treating him differently from MDO's and NGI's for commitment purposes. The indeterminate commitment procedures legitimately advance a compelling state interest in protecting the public from an SVP like defendant who carries a substantial, well-founded risk of reoffending and cannot control his behavior, and who poses a greater risk to a particularly vulnerable class of victims, such as children. We therefore reject defendant's equal protection challenge. (Accord, *People v. McDonald* (2013) 213 Cal.App.4th 1367, 1371; *People v. Landau* (2013) 214 Cal.App.4th 1, 47-48; *People v. McCloud* (2013) 213 Cal.App.4th 1076, 1085-1086; *People v. McKnight* (2012) 212 Cal.App.4th 860, 863-864.)

## DISPOSITION

The order of commitment is reversed and the case is remanded to the trial court; in the event there is a subsequent jury trial, the trial court must, if asked, admit evidence of the 1999 not true finding and instruct the jury it must determine whether the circumstances since 1999 materially have changed so that Rose now has a mental disorder making him currently dangerous.

                                                  _____RAYE_____, P. J.

We concur:

\_\_\_\_\_NICHOLSON\_\_\_\_\_, J.

\_\_\_\_\_MAURO\_\_\_\_\_, J.

15